UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO BANKS,

     Petitioner,

                               CASE NO. 4:23-CV-10947

v.                                HONORABLE F. KAY BEHM

CHRIS KING,

     Respondent.

_____/

**OPINION & ORDER DENYING THE HABEAS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I.    Introduction

Michigan prisoner Antonio Banks ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court convictions. Petitioner pleaded guilty to two counts of second-degree murder, Mich. Comp. Laws § 750.317, two counts of operating a motor vehicle while under the influence causing serious injury, Mich. Comp. Laws § 257.625(5), and being a second habitual offender, Mich. Comp. Laws § 769.10, in the Wayne County Circuit Court. He was sentenced to concurrent terms of 18 years 9 months to 30 years in prison on the murder convictions and 3 years to 7 years 6 months in prison on the operating under the influence convictions in 2017. In his pleadings,

he raises claims concerning his right to counsel of choice, the effectiveness of trial counsel, and the voluntariness of his plea. For the reasons set forth, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from a high speed, drunk driving accident on May 14, 2017 in Detroit, Michigan in which he killed two people and injured several others. He was charged with eight counts: two counts of second-degree murder, Mich. Comp. Laws § 750.317, two counts of operating a motor vehicle while under the influence causing death, Mich. Comp. Laws § 257.625(4), two counts of operating a motor vehicle while under the influence causing serious injury, Mich. Comp. Laws § 257.625(5), and two counts of reckless driving causing serious impairment of a body function, Mich. Comp. Laws § 257.626(3).

During the pre-trial period, Petitioner's trial counsel filed motions to quash, to challenge the Petitioner's hospital statement to police, and to withdraw due to a breakdown in the attorney-client relationship. While those motions were pending, the parties entered into a written plea and sentencing agreement and appeared before the trial court for plea hearing with a *Cobbs* evaluation. At that hearing, Petitioner confirmed on the record that he wished to withdraw all three motions and proceed with a plea. *See* 8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.210-214.

Petitioner proceeded to plead guilty to two counts of second-degree murder, two counts of operating a motor vehicle while under the influence causing serious injury, and being a second habitual offender in exchange for dismissal of the other charges and a *Cobbs* agreement that he would be sentenced to 18 years 9 months to 30 years in prison (a sentence within the guidelines). *Id*. at PageID.204-206, 209, 212, 218.

The trial court subsequently sentenced him in accordance with the plea and sentencing agreement to concurrent terms of 18 years 9 months to 30 years in prison on the murder convictions and 3 years to 7 years 6 months on the operating while intoxicated convictions. *See* 10/10/17 Sent. Tr., ECF No. 9-6, PageID.238-239.

Following sentencing, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising claims concerning his right to counsel of choice and the effectiveness of trial counsel. The court denied the application for "for lack of merit in the grounds presented." *People v. Banks*, No. 341954 (Mich. Ct. App. Feb. 22, 2018); ECF No. 9-8, PageID.249. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Banks*, 503 Mich. 860, 917 N.W.2d 371 (2018).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning the effectiveness of trial and appellate counsel and the voluntariness of his plea. The court denied the motion, essentially finding that the claims lacked merit. *People v. Banks*, No. 17-004910-01-FC (Wayne Co. Cir. Ct. July 1, 2019); ECF No. 9-7, PageID.244-248. More than two years later, the trial court entered a stipulated order re-denying the motion for relief from judgment to allow for a timely appeal due to the lack of notice of its prior decision. *People v. Banks*, No. 17-004910-01-FC (Wayne Co. Cir. Ct. Sept. 15, 2021); ECF No. 6-5, PageID.82-83. Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied for failure to establish that the trial court erred in denying the motion for relief from judgment. *People v. Banks*, No. 359670 (Mich. Ct. App. April 1, 2022); ECF No. 9-10, PageID.354. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. Banks*, 510 Mich. 865, 977 N.W.2d 553 (2022). Petitioner also filed a motion for reconsideration, which was denied in a standard order. *People v. Banks*, 510 Mich. 951, 979 N.W.2d 831 (2022).

Petitioner, through counsel, thereafter filed his federal habeas petition with a supporting brief raising the following claims:

I.      He was deprived of his right to counsel of choice during plea proceedings when the trial court refused a request to terminate his retained attorney because of a breakdown in the attorney-client relationship.

II.     He was denied effective assistance of counsel during the plea process because his attorney failed or refused to consider a nolo plea to avoid civil liability and withdrew a dispositive motion to suppress his statement.

III.    His guilty plea was involuntary because he was not advised of the maximum possible sentence before pleading.

ECF Nos. 1, 6. Respondent filed an answer to the petition contending that it should be denied because the third claim is procedurally defaulted and all of the claims lack merit. ECF No. 10. Petitioner filed a reply to that answer. ECF No. 11.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions and sentences. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
    State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1)

permits a federal habeas court to grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably

applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S.

510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at

694. To find a state court's application of Supreme Court precedent

'unreasonable,' the state court's decision "must have been more than incorrect or

erroneous. The state court's application must have been "objectively

unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also*

*Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential

6

standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's ruling that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stressed that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), a habeas court "must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

Thus, to obtain federal habeas relief, a state prisoner must show that the state court's denial of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). Federal judges "are required to afford state courts due respect by

7

overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to determining whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are determined solely by Supreme Court precedent. Circuit precedent does not constitute clearly established federal law as determined by the Supreme Court and cannot provide a basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam);

8

*see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). Lower federal court decisions, however, may be useful in assessing the reasonableness of a state court's ruling. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, Respondent contends that Petitioner's third habeas claim is procedurally defaulted. The Court declines to address this defense. It is not a jurisdictional bar to review of the merits. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question

9

priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and intertwined with the underlying claim, and the claim is more readily decided on the merits. Accordingly, the Court shall proceed to the merits of the claims.

### B.   Merits

#### 1.   Counsel of Choice

Petitioner first asserts that he is entitled to habeas relief because he was denied his counsel of choice, essentially arguing that the trial court failed to sufficiently inquire into the potential breakdown of the attorney-client relationship when discussing the attorney withdrawal motion before taking his plea. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel, U.S. Const. amend. VI; *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *see also Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). The right to counsel encompasses the right to counsel of choice – and that right is applicable to the extent that a defendant can retain counsel with private funds (such as the case here); an indigent defendant does not have an absolute right

10

to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

In assessing the denial of a motion for substitute counsel, a reviewing court considers: (1) the timeliness of the motion, (2) the adequacy of the trial court's inquiry into the matter, (3) the extent of the conflict between the attorney and client, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011); *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008); *see also Martel v. Clair*, 565 U.S. 648, 663 (2012). The Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 151-152 (citations omitted). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court and is entitled to deference absent an abuse of that discretion. *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017); *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004); *see also Martel*, 565 U.S. at 663-664.

Petitioner raised this claim on direct appeal in the state courts. As previously discussed, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented and the Michigan Supreme Court denied leave to appeal in a standard order.

11

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who waives his or her rights "may not then seek appellate review of claimed deprivation of those rights, for [the] waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-734); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). In this case, prior to tendering his plea, Petitioner specifically confirmed that he was satisfied with trial counsel's representation and that he wanted the trial court to dismiss his motion for the withdrawal of counsel. *See* 8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.213-214. Consequently, Petitioner has waived review of this issue.

Nonetheless, even if this claim is not waived, Petitioner is not entitled to relief. The record simply belies his claim that the trial court failed to sufficiently inquire into the matter. The following discussion occurred on the record:

> THE COURT: Are you satisfied with your attorney's representation, of you, in this proceeding?
>
> DEFENDANT: Yes.

THE COURT: All right.

There was a motion that Mr. Upshaw previously filed about withdrawing as your attorney, and it was suggested that, perhaps, there was a breakdown in the attorney/client representation.

I have not heard testimony in that, that that was suggested in some way.

And — do you believe that there has been an irreparable breakdown in your attorney and client relationship?

DEFENDANT: I spoke with him. I feel like I was wrong, on my behalf, and made up, so I may proceed with the case.

THE COURT: All right.

Are, are you asking the Court to dismiss your motion to obtain another attorney?

DEFENDANT: Yes.

THE COURT: All right.

And just, once again, in your opinion, has there been an irreparable breakdown in your relationship with Mr. Upshaw?

DEFENDANT: No.

THE COURT: And you are satisfied with his representation?

DEFENDANT: Yes.

THE COURT: Okay.

8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.213-214.

This discussion shows that the trial court sufficiently inquired into whether there was a breakdown in the attorney-client relationship and whether Petitioner was satisfied with counsel's representation. Petitioner does not indicate what more the trial court could have or should have done, nor does he put forth any facts showing that there was, in fact, a breakdown in the attorney-client relationship that would have warranted the substitution of counsel, particularly just a few days before trial. Petitioner fails to establish that an error occurred, let alone one of constitutional magnitude. Habeas relief is not warranted on this claim.

### 2.      Effectiveness of Trial Counsel

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to consider a no contest plea to avoid civil liability and for withdrawing the motion to suppress his hospital statement to police (actually advising Petitioner to do so). Respondent contends that this claim lacks merit.

The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he or she was denied the Sixth Amendment right to the effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the

14

"strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's errors, [he/she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id*. The Supreme Court has also stated that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 59-60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's

15

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. Additionally, the Supreme Court has emphasized the extraordinary deference to be afforded trial counsel in the area of plea bargaining. *See Premo v. Moore*, 562 U.S. 115, 125 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage"); *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011) (citing *Premo*).

Petitioner raised this claim on direct appeal in the state courts. As discussed, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented and the Michigan Supreme Court denied leave to appeal in a standard order.

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that counsel was ineffective for withdrawing/advising him to withdraw the motion to suppress his hospital statement prior to his plea (or for any other conduct during the pre-plea period), he is not entitled to relief. It is well-settled that claims about the alleged deprivation of constitutional rights that occur before the entry of a guilty or no contest plea are foreclosed by the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme Court has explained:

16

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he [or she] is in fact guilty of the offense with which he [or she] is charged, he [or she] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He [or she] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he [or she] received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty or no contest generally waives any non-jurisdictional claims that arose before the plea. In such a case, a reviewing court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *Broce*, 488 U.S. at 569. Petitioner's claim that counsel was ineffective for taking or failing to take certain actions during the pre-trial period is thus foreclosed by his plea and does not warrant relief.

Second, to the extent that Petitioner asserts that counsel was ineffective for not considering or advising him about a no contest plea, as opposed to a guilty plea, he is not entitled to relief. Petitioner fails to show that counsel was deficient. The ultimate decision about whether to accept a plea rests with the criminal defendant. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003); *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002). In this case, Petitioner confirmed on the record that he consulted with counsel, that he understood the plea and sentencing agreement and the *Cobbs* evaluation, and that he wanted to plead guilty accordingly. *See* 8/25/17 Plea Hrg., ECF No. 9-4, PageID.211-213, 218. He offers

17

no proof, other than his own assertions, regarding what trial counsel did or did not

discuss with him. Nor does he offer any evidence which shows that the prosecution

would have been willing to consider a no contest plea, rather than a guilty plea, or

that the trial court would have accepted such a plea. It is well-settled that

conclusory allegations, without evidentiary support, are insufficient to warrant

habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also*

*Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman*

and denying habeas relief); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir.

2006) (bald assertions and conclusory allegations do not provide a basis for an

evidentiary hearing on habeas review). As the Supreme Court has stated: "It should

go without saying that the absence of evidence cannot overcome the 'strong

presumption that counsel's conduct [fell] within the wide range of reasonable

professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting

*Strickland*, 466 U.S. at 689).

Other federal courts have rejected similar ineffective assistance claims based

on the failure to provide supporting evidence. *See*, *e.g.*, *Conley v. Turner*, No.

3:17CV1469, 2019 WL 3361262, *6 (N.D. Ohio June 10, 2019) (denying habeas

relief on claim that counsel was ineffective for allowing the petitioner to plead

guilty instead of no contest where there was no evidence about counsel's advice

and no indication that the prosecutor would have agreed to a no contest plea), R &

18

R adopted, No. 3:17CV1469, 2019 WL 3365657 (N.D. Ohio July 25, 2019); *James v. Moore*, No. 1:07-CV-330, 2008 WL 5188145, *23-24 (S.D. Ohio Dec. 10, 2008) (adopting R & R and similarly denying habeas relief); *see also Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance claim based on counsel's alleged failure to discuss possible defenses where petitioner confirmed his understanding of the plea agreement in court and only evidence that counsel failed to do so consisted of "self-serving statements").[1] Petitioner fails to demonstrate that trial counsel's performance was deficient.

Moreover, even if counsel failed to consider or advise Petitioner about a no contest plea, Petitioner fails to show that he was prejudiced by such conduct. The test of whether a petitioner would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)); *see also Lee v. United States*, 582 U.S. 357, 369 (2017)

---

[1] The Court notes that at least two federal courts have held that the failure to advise a defendant of a "mere potential collateral consequence" of a guilty plea, such as civil liability, does not give rise to a claim of ineffective assistance of counsel." *See Joshi v. United States*, No. 4:21-CV-01253 JAR, 2023 WL 5377607, *6 (E.D. Mo. Aug. 21, 2023) (citing cases); *Patel v. United States*, No. CV 18-14628 (SDW), 2023 WL 372826, *15 (D.N.J. Jan. 23, 2023).

("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").

Petitioner does not allege any facts which indicate that there is a reasonable probability that the prosecution would have offered him a no contest plea, that the trial court would have accepted a no contest plea (such that he would have had the opportunity to plead no contest), and/or that he would have not pleaded guilty and insisted on going to trial. To be sure, given the significant evidence of guilt and lack of apparent defenses, Petitioner's plea and sentencing agreement was a favorable one that resulted in the dismissal of additional charges and the avoidance of a life sentence. Petitioner fails to show that he was prejudiced by counsel's conduct. *See, e.g.*, *Bell v. United States*, No. 3:13-CR-141-J-32JRK, 2018 WL 6829706, *6 (M.D. Fla. Dec. 27, 2018) (finding no prejudice and denying ineffective assistance claim brought by federal prisoner in a motion to vacate sentence under 28 U.S.C. § 2255). Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 3. Voluntariness of the Plea

Petitioner also asserts that he is entitled to habeas relief because his guilty plea was involuntary/unknowing due to the trial court's failure to advise him of the

maximum possible sentences for his offenses at the plea hearing. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

Petitioner raised this claim on collateral review in the state courts. The state trial court reviewed the claim and denied relief. The court explained:

> Defendant argues that his plea was not "understanding" as required by MCR 6.302 because he was not made aware of the maximum sentence after the Habitual Offender enhancement was applied.
>
> MCR 6.302 states that the "court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." The court must also find that the defendant

21

understands the following: the offense(s) the defendant is pleading to, the maximum prison sentence for the offense(s) and the mandatory minimums if applicable, and that the defendant would not have a trial and the rights that go with having a trial. The defendant must also understand that a plea of guilty or no contest will result in the defendant being unable to claim that he was threatened or promised something in exchange for his guilty plea as well as the defendant would only be able appeal his conviction by leave to appeal. MCR 6.302.

In *People v. Jones*, 410 Mich. 407 (1981), the Michigan Supreme Court found that when the defendant is not made aware of the maximum possible sentence before entering a plea, there is an error in the plea taking process and reversal of the defendant's conviction is required. *People u. Brown*, 492 Mich. 684, 695 (2012). This approach was then limited in *People v. Jackson*, 417 Mich. 243 (1983). The Court in *Jackson* stated that automatic reversal as required under *People v. Jones*, 410 Mich. 407 (1981), would not be required when a defendant is sentenced pursuant to a sentencing agreement. *People v. Jackson*, 417 Mich. 243, 246 (1983).

The Michigan Supreme Court in *People v. Brown*, 492 Mich. 684 (2012), further refined the requirement of MCR 6.302(B)(2), stating that "before pleading guilty, a defendant must be notified of the maximum possible prison sentence with the habitual-offender enhancement because the enhanced maximum becomes the 'maximum possible prison sentence' for the principal offense." *Id*. at 694. The result of this was that the "trial court is not advising [the defendant] of the 'true' potential maximum sentence." *Id*. According to the Court in Brown, the remedy for failing to advise the defendant of the maximum sentence under a habitual offender statute is to allow the defendant to "elect either to allow the plea and sentence to stand or to withdraw the plea." *Id*. at 695-696. Brown also indicates that this remedy is only available when the defendant notified of the sentence enhancement after pleading guilty:

> [T]he remedy provided by MCR 6.310(C) will apply when a defendant is not notified of the enhancement until after pleading guilty. MCR 6.302 requires a voluntary

22

and understanding plea. Hence, the concerns about a
defendant understanding the consequences of a guilty
plea are present when the defendant is notified of
possible sentence enhancement only after pleading guilty.
*People v. Brown*, 492 Mich. 684, 701 (2012) (emphasis
added).

In the case currently before this court, the Defendant relies on *Brown*,
indicating that because he was not made aware of his maximum
sentence as a habitual offender, he should be entitled to withdraw his
plea. This case is different from *Brown*, however, for the following
reasons.

First, a Notice to Enhance Sentence was filed with the circuit court on
June 14, 2017. Defendant was then arraigned on the information on
June 15, 2017. At the arraignment, Defendant waived formal reading
of the information and stood mute. Arraignment 6/15/17 pg. 3. A
review of the information filed with the court reveals that the charges,
the maximum sentence for each charge, as well as the sentence
enhancement for a Habitual Second Offense Notice. The Michigan
Supreme Court has noted that the purpose of the information is to
provide notice to the Defendant of the charges against him so that he
may respond to the charges. *People v. Rios*, 386 Mich. 172, 175
(1971), *People v. McGee*, 258 Mich. App. 683, 699-700 (2003).

Second, when the Defendant pled guilty, Defendant was placed on
notice that the Habitual Second Offense Notice would be applied. The
prosecutor stated on the record that "we are acknowledging that the
defense would be pleading to counts one, two, five, six, and the
habitual." Plea 8/25/17 pg. 3. Furthermore, the prosecutor continued,
stating that "Count one is murder in the second degree; count two,
murder in the second degree; count five is operating while intoxicated
causing serious injury, which is a five year; count six is operating
while intoxicated causing a serious injury. There will be a habitual
second, 769.10. Seeing how this is a life max, it really doesn't affect it,
but it, it's in there." *Id*. 3-4. The Habitual Second Offense Notice
allows for an enhancement of one and a half times the maximum
sentence of the underlying offense. MCL 769.10. This means that the

> five year sentence for counts five and six would change from five
> years to seven and a half years.
>
> In addition to these two instances where the Defendant was put on
> notice of the sentence enhancement, the Defendant was asked by the
> court whether he "had enough time to speak with [his] lawyer today
> and prior to today, about this agreement, to plead guilty to the counts
> that have been outlined, and to accept a sentence that I've stated on
> the record." Plea 8/25/17 pg. 11.
>
> Defendant responded affirmatively to this question. *Id.* Defendant was
> then asked if he understood the terms of the plea agreement, and
> Defendant answered affirmatively. *Id.* at 12.
>
> Based on the record and the Michigan Supreme Court's holding in
> *People v. Brown*, 492 Mich. 684 (2012), this appears that Defendant
> should have been on notice of the maximum sentence pursuant to the
> habitual offender notice and as a result, would not be entitled to
> withdraw his plea.

Opin., ECF No. 9-7, PageID.246-248. The Michigan appellate courts denied leave

to appeal in standard orders.

The state courts' denial of relief is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts. The state

court record reveals that Petitioner's plea was knowing, intelligent, and voluntary.

Petitioner was 31 years old at the time of his plea and was familiar with the

criminal justice system as a second habitual offender. There is no evidence that he

suffered from any physical or mental problems which impaired his ability to

understand the criminal proceedings or his plea. Petitioner was represented by

legal counsel, conferred with counsel during the proceedings, and stated that he

was satisfied with counsel's representation. Petitioner was advised that he would be giving up certain rights by pleading guilty and he signed a written agreement. The parties discussed the charges and the terms of the plea and sentencing agreement. Petitioner indicated that he understood the plea and sentencing agreement and confirmed that he wanted to plead guilty. He also acknowledged that he had not been threatened or promised anything (other than what was included in the agreement). He also provided a factual basis for his plea. *See* 8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.204-206, 209, 211-218.

Petitioner is bound by the statements that he made at the plea hearing. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). The fact that Petitioner may be dissatisfied with his plea or may desire more lenient treatment does not render his plea unknowing or involuntary. *See Brady*, 397 U.S. at 757. A defendant is not entitled to withdraw a plea "merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id*.

Petitioner asserts that his plea was involuntary/unknowing because the trial court did not specifically advise him of the maximum sentences that he faced for the offenses to which he pleaded guilty. "[F]or a defendant's plea . . . to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

25

As an initial matter, the Court notes that Petitioner is not entitled to relief on any claim that the trial court violated plea-taking procedures under Michigan law. *See*, *e.g.*, *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (ruling that district court erred in granting habeas relief on claim that plea colloquy failed to conform to state rules); *Limon v. Brewer*, No. CV 18-10772, 2023 WL 158897, *10 (E.D. Mich. Jan. 11, 2023) (citing *Riggins*); *Beeler v. Campbell*, No. 2:15-CV-14073, 2017 WL 2812806, *6 (E.D. Mich. June 29, 2017) (denying habeas relief on similar plea colloquy claim). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner fails to state a claim upon which federal habeas relief may be granted as to this issue.

Petitioner also fails to demonstrate that the trial court's plea colloquy rendered his plea involuntary/unknowing, i.e. without a sufficient understanding of the consequences of the plea. The record indicates that Petitioner was aware of the maximum penalties that he faced for the charged offenses. As discussed by the trial court, the Information and Habitual Offender Notice provided Petitioner with

26

notice of the charges, the maximum sentence for each offense, and the second habitual offender sentencing enhancement. At the plea hearing, the prosecutor stated that Petitioner's maximum sentence was life in prison. *See* 8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.205. Under Michigan law, the maximum sentence for second-degree murder, with or without a second habitual offender enhancement, is life in prison. Mich. Comp. Laws §§ 750.317, 769.10. Thus, Petitioner was aware of the maximum sentences for the charged offenses and the maximum penalty that he faced – life in prison – at the time of his plea. Given that the sentences run concurrently under Michigan law, Petitioner was informed of the overall maximum sentence that he could face upon conviction. This was sufficient to satisfy due process. *See Beeler*, 2017 WL 2812806 at *6.

Additionally, the Court notes that Petitioner's plea agreement included a *Cobbs* evaluation in which the trial court agreed to a sentence of 18 years 9 months to 30 years in prison. The trial court informed Petitioner of that sentence and Petitioner acknowledged his understanding of the plea and sentence agreement and the maximum sentence that the court would impose if it accepted his plea. *See* 8/25/17 Plea Hrg. Tr., ECF No. 9-4, PageID.209, 212. Petitioner was thus informed of the overall maximum sentence that he actually faced by pleading guilty. And, he was, in fact, subsequently sentenced in accordance with his plea and sentencing agreement. Petitioner was not mislead about his plea or its

27

sentencing consequences. His plea was knowing, intelligent, and voluntary. More importantly, for purposes of federal habeas review, the state court's ruling to that effect is reasonable. Habeas relief is not warranted on this claim.

### 4. Plea Withdrawal

Lastly, to the extent that Petitioner asserts (as part of his other claims) that he is entitled to relief because the state courts denied his requests to withdraw his guilty plea, he fails to state a cognizable federal habeas claim. Such a claim is not cognizable because it is a state law claim. A criminal defendant has no federal constitutional right, or absolute right under state law, to withdraw a knowing, intelligent, and voluntary plea. *Chene v. Abramajtys*, 76 F.3d 378, 1996 WL 34902, *2 (6th Cir. 1996) (table). Consequently, "the decision to permit a defendant to withdraw a plea invokes the trial court's discretion. A trial court's abuse of discretion generally is not a basis for habeas corpus relief." *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted); *see also Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001). As discussed, state courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68. Habeas relief is not warranted on this claim.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the habeas petition.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is closed.

**SO ORDERED**.


Dated: September 23, 2025                    s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge